IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:  Chapter 11

ANAVERDE LLC,  Case No. _____

           Debtor.

# DISCLOSURE STATEMENT ACCOMPANYING PLAN OF LIQUIDATION FOR ANAVERDE UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Christopher P. Simon, Esq. (No. 3697)
Kevin S. Mann, Esq. (No. 4576)
Cross & Simon, LLC
913 N. Market Street
11th Floor
P.O. Box 1380
Wilmington, DE 19899-1380
Ph: (302) 777-4200
Fax: (302) 777-4224
Email: kmann@crosslaw.com

*Counsel to Debtor and Debtor in Possession*

Dated: January 15, 2010

THIS IS NOT A SOLICITATION OF ACCEPTANCES OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION OR AMENDMENT.

# TABLE OF CONTENTS

Page

I. INTRODUCTION

II. OVERVIEW OF THE PLAN

A. Holders Of Claims and Equity Interests Entitled To Vote .................................................. 6
B. Voting Procedures.................................................................................................................. 7
C. Confirmation Hearing ............................................................................................................ 8
D. Disclaimer............................................................................................................................... 9

SECTION I. OVERVIEW OF CHAPTER 11

SECTION II. DESCRIPTION OF THE DEBTOR'S BUSINESS

A. Overview............................................................................................................................... 11
B. Restructuring Efforts............................................................................................................ 12
    1. Efforts to Secure New Equity .................................................................................. 13
    2. The Debtor's Post petition Financing..................................................................... 13

SECTION III. SIGNIFICANT PRE-PETITION TRANSACTIONS

A. Description of Anaverde's Primary Financing :................................................................ 14
    1. Loan from Cadim Note, Inc. ................................................................................... 14
    2. Outstanding bills from Anaverde's subcontractors and vendors ........................ 14

SECTION IV.
THE CHAPTER 11 CASE

A. Disclosure Statement and Plan Confirmation Hearings................................................... 15
B. Significant "First Day" Motions in the Chapter 11 Case................................................. 15
    1. Motions Relating to Administration of Case and its Professionals: ..................... 15
    2. Motion Relating to Financing: ................................................................................ 16
    3. Motions Relating to Employees and the Operation of the Business:................... 16
C. Motion Of Anaverde For An Order: (A) Approving Bidding Procedures With Respect To Selection Of A Transaction, And (B) Approving The Form And Manner Of Notice Of Sale Process And Of Approval Hearing. (the "Sale Procedures Motion")................................................................................................................ 16
    1. Background Regarding The Sale Transaction ..................................................... 17
    2. Pre-Petition Marketing Efforts................................................................................ 17
    3. The Motion and Procedures .................................................................................... 17

| | | |
|---|---|---|
| D. | Deadline to File Proof of Claims and Equity Interests | 19 |
| E. | Assumption and Rejection of Executory Contracts | 19 |
| | 1. Assumption and Cure | 19 |
| | 2. Rejection and Damages | 20 |
| F. | Parties in Interest and Professionals | 20 |
| | 1. The Debtor's Professionals | 20 |

SECTION V.
THE FUTURE BUSINESS OF REORGANIZED DEBTOR OR
POST EFFECTIVE DATE DEBTOR

| | | |
|---|---|---|
| A. | Capitalization and Structure of Post-Effective Date Debtor | 20 |
| B. | Management of the Reorganized Debtor or Post Effective Date Debtor | 20 |

SECTION VI.
SUMMARY OF THE PLAN OF LIQUIDATION

| | | |
|---|---|---|
| A. | Introduction | 22 |
| B. | Classification and Treatment of Administrative Claims, Claims and Equity Interests Under the Plan | 22 |
| | 1. Unclassified Claims | 27 |
| | 2. Classified Claims Against and Equity Interests in Anaverde. | 29 |
| A. | Overview of Plan Implementation | 32 |
| B. | Sale Agreement | 33 |
| C. | Distributions Under the Plan | 34 |
| | 1. General | 34 |
| | 2. Objections to Claims | 37 |
| | 3. Disputed Claims; Reserve and Estimations | 37 |
| | 4. Setoffs | 38 |
| | 5. The Creditors' Committee | 39 |
| | 6. Preservation Of Causes Of Action | 39 |
| | 7. Value of Reorganized Debtor | 39 |
| D. | General Information Concerning the Plan | 39 |
| | 1. Continuation of Certain Retirement and Other Benefits | 39 |
| | 2. No Liability For Solicitation Or Participation | 39 |
| | 3. Limitation of Liability | 40 |
| | 4. Objections to Claims | 40 |
| E. | Effect of Confirmation of the Plan | 40 |
| | 1. Vesting of Assets | 40 |
| | 2. Discharge of Debtor and Injunction | 40 |
| F. | Retention of Jurisdiction | 40 |
| G. | Miscellaneous Provisions | 43 |
| | 1. Exemption From Transfer Taxes | 43 |
| | 2. Payment of Statutory Fees | 44 |
| | 3. Modification or Withdrawal of the Plan | 44 |

| | | |
|---|---|---|
| 4. | Governing Law | 44 |
| 5. | Filing or Execution of Additional Documents | 44 |
| 6. | Withholding and Reporting Requirements | 44 |
| 7. | Waiver of Rule 62 (a) of the Federal Rules of Civil Procedure | 44 |
| 8. | Headings | 45 |
| 9. | Exhibits and Schedules | 45 |
| 10. | Notices | 45 |
| 11. | Conflict | 47 |
| 12. | Successors And Assigns | 47 |
| 13. | Saturday, Sunday Or Legal Holiday | 47 |
| 14. | Post-Effective Date Effect Of Evidences Of Claims Or Equity Interests | 48 |
| 15. | Severability Of Plan Provisions | 48 |
| 16. | Balloting | 48 |
| 17. | No Admissions or Waiver of Objections | 48 |
| 18. | Survival of Settlements | 48 |

SECTION VII.     PROJECTIONS AND VALUATION ANALYSIS

SECTION VIII.     CONFIRMATION PROCEDURE

| | | |
|---|---|---|
| A. | Solicitation of Votes | 49 |
| B. | The Confirmation Hearing | 50 |
| C. | Confirmation | 50 |
| | 1. Feasibility | 53 |
| | 2. Best Interests Test/Liquidation Analysis | 53 |

SECTION IX.
EFFECTIVENESS OF THE PLAN

| | | |
|---|---|---|
| A. | Conditions to Confirmation | 54 |
| B. | Conditions To Effective Date | 55 |
| C. | Waiver of Conditions | 55 |
| D. | Effect of Failure of Conditions | 55 |
| E. | Vacatur of Confirmation Order | 56 |

SECTION X.
ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

| | | |
|---|---|---|
| A. | Liquidation Under Chapter 7 | 56 |
| B. | Alternative Plans of Liquidation | 56 |
| C. | Post-Confirmation Conversion/Dismissal. | 57 |
| D. | Final Decree. | 57 |

# SECTION XI.
# CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

# I. INTRODUCTION

The Debtor hereby submits this disclosure statement (the "Disclosure Statement")[1] pursuant to Section 1125 of the Bankruptcy Code, for use in the solicitation of votes on its Plan of Liquidation (as it may be amended, modified or supplemented, the "Plan"), filed with the United States Bankruptcy Court for the District of Delaware on or about January 15, 2010.

On January 15, 2010 (the "Commencement Date" or the "Petition Date"), Anaverde ("Anaverde" or the "Debtor") filed with the Clerk of the United States Bankruptcy Court for the District of Delaware (the "Court") a voluntary petition for relief under chapter 11 of the Bankruptcy Code, The Debtor has also filed with the Court the Plan, which sets forth the manner in which Claims against, and Equity Interests in, the Debtor will be treated. The Plan is attached to the Disclosure Statement as Exhibit A. This Disclosure Statement describes certain aspects of the Plan, the Debtor's business, and related matters. Unless otherwise defined herein, each capitalized term contained herein has the meaning ascribed thereto in the Plan. For purposes of this Disclosure Statement, Anaverde, together with its non-debtor subsidiaries and affiliates to the extent applicable, shall be referred to as the "Company."

Anaverde believes that the Plan is fair and equitable and in the best interests of all stakeholders. To achieve such higher value, the Plan contemplates treatment of Anaverde's unsecured creditors and equity interest holders in accordance with the classifications set forth more fully herein. You should review the proposed classifications and the treatment to be afforded each class carefully before voting to accept or reject the Plan.

**THE PLAN IS THE RESULT OF A THOROUGH MARKETING EFFORT AND BANKRUPTCY COURT APPROVED PROCEDURES FOR THE SOLICITATION OF A SALE TRANSACTION.[2] THE DEBTOR BELIEVES THE PLAN REPRESENTS THE BEST POSSIBLE RETURN TO HOLDERS OF CLAIMS AND EQUITY INTERESTS. THE DEBTOR STRONGLY URGES YOU TO READ THE DISCLOSURE STATEMENT AND VOTE IN FAVOR OF THE PLAN.**

This Disclosure Statement is submitted pursuant to Section 1125 of the Bankruptcy Code to holders of Equity Interests or Claims against the Debtor in connection with (i) the solicitation of acceptances of the Plan and (ii) the hearing to consider confirmation of the Plan, scheduled for _____, 2010 at _____.

---

1     Capitalized terms not defined in this Disclosure Statement shall have the meanings ascribed to the in the Plan, Plan Support Agreement or Bankruptcy Code.

2     On January 15, 2010, the Debtor filed its Motion For An Order (A) Approving Bidding Procedures With Respect To Selection Of A Transaction, And (B) Approving The Form And Manner of Notice Of Sale Process And Of Approval Hearing (the "Bidding Procedures Motion"). Pursuant to the Bidding Procedures Motion, the Debtor is seeking entry of an order establishing procedures to govern the participation in an auction with respect to the sale of the substantially all of the assets of the Debtor (The "Bidding Procedures Order"). At the auction, the Debtor will select the highest and best Sale Transaction which will be implemented pursuant to a plan of liquidation. This Plan will be modified following the auction to specifically describe the selected Sale Transaction and provide for its implementation.

Attached as Exhibits to this Disclosure Statement are copies of the following:

* The Plan (Exhibit A);

* An Order of the Court dated _____, 2010, (the "Disclosure Statement Order") approving the Disclosure Statement and establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan (Exhibit B);

* Liquidation Analysis and Projections (Exhibit C):

In addition, a Ballot for the acceptance or rejection of the Plan is enclosed with the Disclosure Statement submitted to the holders of Claims and Equity Interests that the Debtor believes are entitled to vote to accept or reject the Plan.

On _____, 2010, after notice and a hearing, the Court entered the Disclosure Statement Order approving this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtor's creditors to make an informed judgment as to whether to accept or reject the Plan. Approval of the Disclosure Statement does not constitute a determination by the Court as to the fairness or merits of the Plan.

The Disclosure Statement Order sets forth in detail the deadlines, procedures and instructions for voting to accept or reject the Plan and for filing objections to confirmation of the Plan, the record date for voting purposes, and the applicable standards for tabulating votes. In addition, detailed voting instructions accompany each Ballot. Each holder of a Claim or Equity Interest entitled to vote on the Plan should read the Disclosure Statement, the Plan, the Disclosure Statement Order and the instructions accompanying the Ballots in their entirety before voting on the Plan. These documents contain, among other things, important information concerning the classification of Claims and Equity Interests for voting purposes and the tabulation of votes. No solicitation of votes to accept the Plan may be made other than pursuant to Section 1125 of the Bankruptcy Code.

## II. OVERVIEW OF THE PLAN

The following table briefly summarizes the classification and treatment of Claims and Equity Interests under the Plan.

The following is a designation of the Classes of Claims and Equity Interests under the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Class or Classes. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released or otherwise satisfied before the Effective

- 2 -

1/14/10 10:23 PM

Date; a Claim or Equity Interest which is not an Allowed Claim or Allowed Equity Interest is not in any Class. A Disputed Claim or Disputed Equity Interest, to the extent that it subsequently becomes an Allowed Claim or Allowed Equity Interest, shall be included in the Class for which it would have qualified had it not been disputed.. Notwithstanding anything to the contrary contained in the Plan, no distribution shall be made on account of any Claim or Equity Interest which is not an Allowed Claim or an Allowed Equity Interest.

| Class | Type of Allowed Claim or Equity Interest | Treatment | Estimated Recovery |
|---|---|---|---|
| -- | Administrative Claims | Debtor does not anticipate that there will be any Administrative Claims | 100% |
|  | The total amount of Administrative Claims is estimated to be $0 as they are to be paid in the ordinary course of business. | Paid in full in Cash on the Effective Date or as soon as practicable thereafter, or in accordance with the terms and conditions of transactions or agreements relating to obligations incurred in the ordinary course of business during the pendency of the Chapter 11 Case or assumed by Buyer. |  |
| -- | Priority Tax Claims | Debtor does not anticipate that there will be any Priority Tax Claims. | 100% |
|  | The total amount of Tax Claims is estimated to be $0 as they are to be paid as and when due. |  |  |
| 1 | Secured Claims of Cadim | Impaired; subject to confirmation of this Plan, Cadim, the Holder of the Class 1A Secured Claims of Cadim would accept, in full satisfaction, settlement, release and discharge of and in exchange for such Secured Claims, shall receive:<br><br>(1) $10,125,000 of the cash proceeds from the Sale Transaction plus an amount equal to 12% per annum, compounded annually, on $10,125,000 from December 24, 2009 until the $10,125,000 is | 15.8-16.4% |

| Class | Type of Allowed Claim or Equity Interest | Treatment | Estimated Recovery |
|---|---|---|---|
| | | disbursed up to a maximum of $948,699;[3] | |
| | | (2) any outstanding reimbursements that are invoiced by, and are payable to Cadim under the Plan Support Agreement, of its reasonable fees and expenses of Cadim's counsel incurred by Cadim in pursuing the Plan;[4] and | |
| | | (3) 25% of the cash profits from sales of land included in the Project which (1) are received by New Anaverde during the two-year period immediately following consummation of the Plan, and (2) exceed the sum of (a) $26,700,000, (b) an amount equal to 12% per annum, compounded annually, on $10,125,000 from December 24, 2009 to the time the $10,125,000 payment to Cadim is made, (c) any other amounts paid to Cadim (for fees and expenses of its counsel or otherwise) pursuant to this Agreement, the Plan or any Alternative Plan, (d) any other amounts paid by New Anaverde in connection with the Bankruptcy Case, whether through the Plan, the DIP Financing or otherwise, and (e) any other out-of-pocket cost paid, or investments made, by Anaverde or New Anaverde after November 30, 2009, which are related to the Project. | |
| 2 | DIP Credit Facility Claims | On the Effective Date, to the extent that there are any amounts outstanding under the DIP Credit Facility,[5] the Debtor shall pay such amount in Cash on the Effective Date. Once such payments have been made, the DIP Credit Facility shall be deemed terminated and the lenders under the DIP Credit Facility shall take all reasonable action | 100% |

---

[3] Cadim has agreed to gift to the unsecured creditors (i.e., the members of the Convenience Class and the General Unsecured Creditors) the next $350,000 of cash proceeds from the Sale Transaction which would otherwise be payable to Cadim for its Secured Claim.

[4] The amount of reasonable fees and expenses of Cadim subject to reimbursement is capped at $383,000.

[5] New Anaverde may credit bid the amounts outstanding under the DIP Credit Facility as part of the proposed Sale Transaction. If the Buyer is a party other than New Anaverde, the Buyer will be required to pay an amount of cash sufficient to make the payments on the secured claims of Cadim plus the $350,000 proceeds Cadim is gifting to the unsecured creditors plus pay the DIP Credit Claims in full.

| Class | Type of Allowed Claim or Equity Interest | Treatment | Estimated Recovery |
|---|---|---|---|
| | | necessary to confirm the removal of any claims and liens on the properties and assets of the Debtor or Post-Effective Date Debtor securing the DIP Credit Facility Claim | |
| 3 | Other Secured Claims: | Debtor believes that no parties hold any Other Secured Claims as the Claims of Cadim exceed the value of the collateral.<br><br>Impaired. It is estimated each Holder of an Allowed Subordinated Claim will not receive or retain any property or interest.<br><br>The assets of the Debtor will be sold pursuant to a Sale Transaction, free and clear of all liens, security interests or other encumbrances on the assets. To the extent any lien, security interest or encumbrance exists on the assets remains, it shall be terminated and removed on the Effective Date.<br><br>To the extent that an Other Secured Claim Holder chooses to release and waive its security interest, such Other Secured Claim will become and be treated as a General Unsecured Claim. | 0% |
| 4 | Priority Claims | Debtor believes that no parties hold any Priority Claims.<br><br>Impaired; To the extent any Priority Claim exists, each Holder of an Allowed Priority Claim will be treated as an Allowed Class 5 Claim and be allowed to receive a Pro Rata share of the $350,000 of the cash proceeds of the Sale available for members of the Convenience Class and the General Unsecured Creditors.[6] | Undetermined |
| 5 | General Unsecured Claims | Impaired; each Holder of an Allowed Class 5 Claim will receive, on the Effective Date or as soon as practicable thereafter, a Pro Rata share of the amount remaining of the $350,000 of the cash proceeds of the Sale Transaction after the | Undetermined |

---

[6] Debtors do not anticipate any proceeds from the Sale Transaction will be available to pay Priority Claims other than as a part of the General Unsecured Claims.

| Class | Type of Allowed Claim or Equity Interest | Treatment | Estimated Recovery |
|---|---|---|---|
| | | members of the Convenience Class have been paid which, if this Plan is confirmed, Cadim would gift to the unsecured creditors from distributions otherwise owed to Cadim on account of its Secured Claim. | |
| 6 | Convenience Class Claims | Impaired. Will receive cash equal to 50% of the Allowed Claim. Members of the Convenience Class shall be paid from the $350,000 cash proceeds of the Sale Transaction, which Cadim would otherwise have been entitled to receive on account of its Secured Claim, but Cadim would, if the Plan, is confirmed to gift to the unsecured creditors and shall be paid prior to distributing the pro rata shares due to the General Unsecured Creditors. | Estimated at 50% |
| 7 | Subordinated Claims<br><br>Debtor does not believe any such claims exist | Impaired; it is estimated each Holder of an Allowed Subordinated Claim will not receive or retain any property or interest. | Estimated at 0% |
| 8 | Intercompany Claims<br><br>Debtor does not believe any such claims exist | Impaired; it is estimated each Holder of an Allowed Intercompany Claim will not receive or retain any property or interest. | Estimated at 0% |
| 9 | Equity Interest Claims | Impaired; it is estimated each Holder of an Allowed Equity Interest Claims Claim will not receive or retain any property or interest.<br><br>All Equity Interests in the Debtor will be terminated on the Effective Date. | 0% |

A.   **Holders Of Claims and Equity Interests Entitled To Vote**

Pursuant to the provisions of the Bankruptcy Code, only holders of Allowed Claims and Allowed Equity Interests in Classes of Claims and Equity Interests, respectively, that are Impaired are entitled to vote to accept or reject a proposed chapter 11 plan. Holders of Claims and Equity Interests in classes that are Unimpaired under a chapter 11 plan are deemed to

accept the Plan and are not entitled to vote. Holders of Claims and Equity Interests in classes that will receive no property or interest under the Plan are deemed to have rejected the Plan and are not entitled to vote.

With respect to Class 2, Class 2 is Unimpaired and is presumed conclusively to have accepted the Plan.

With respect to Class 1, Class 4, Class 5, and Class 6 such classes are Impaired.

With respect to Class 3, Class 7, Class 8, and Class 9, such classes are expected to be Impaired, but the votes of these Classes will not be solicited. Holders of such Claims and Equity Interests are not receiving any distributions under the Plan and therefore are deemed to have rejected the Plan.

Generally, for the Plan to be confirmed by the Court, two-thirds in dollar amount, and one-half in number of the Allowed Claims, or with respect to the Allowed Equity Interests two-thirds of the Equity Interests, in each Impaired Class of Claims, or Equity Interests, that actually are voted must vote to accept the Plan, The Plan may be confirmed under certain circumstances, despite dissent by one or more Impaired Classes, and the Debtor reserves the right to seek such non-consensual confirmation of the Plan. However, a holder of a Claim or Equity Interest will be deemed to have rejected the Plan if such plan provides that the Claims or Equity Interests of such class do not entitle such holders to receive or retain any property under the Plan.

If a Class of Claims or Equity Interests rejects the Plan, the Plan may be confirmed by the Court pursuant to Section 1129(b) of the Bankruptcy Code Section 1129(b) permits the confirmation of a plan of liquidation notwithstanding the non-acceptance of the Plan by one or more impaired classes of claims or equity interests, so long as the Court finds that the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each non-accepting class.

**B.        Voting Procedures**

As described more fully in this Disclosure Statement, if you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for the purpose of voting on the Plan. If you are entitled to vote Claims or Equity Interests in more than one Class, you will receive a separate Ballot for each Class of Claims or Equity Interests. Each Ballot has been coded to reflect the Class of Claims and Equity Interests it represents. Accordingly, in voting to accept or reject the Plan, you must use only the coded Ballot or Ballots sent to you with this Disclosure Statement, Please complete and sign your original Ballot (copies, facsimiles and oral votes will not be accepted), and return it to the Voting Agent at the address set forth on the Ballot.

TO BE COUNTED, YOUR COMPLETED BALLOT MUST BE RECEIVED BY THE VOTING AGENT NO LATER THAN [INSERT] _.M., EASTERN TIME, ON [INSERT DATE] ANY EXECUTED BALLOT RECEIVED BY THE VOTING AGENT THAT DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DISALLOWED.

Any Claim or Equity Interest in an Impaired Class that otherwise is entitled to vote on the Plan, and as to which an objection or request for estimation is pending or that is scheduled by the Debtor as un-liquidated, disputed or contingent, is not entitled to vote on the Plan unless the holder of such Claim or Equity Interest has obtained an order of the Court temporarily allowing such Claim or Equity Interests for the purpose of voting on the Plan.

Pursuant to the Disclosure Statement Order, the Court set _____, 2010 as the record date for voting on the Plan and for receiving distributions under the Plan. Accordingly, only holders of record as of _____, 2010 that otherwise are entitled to vote under the Plan will receive a Ballot and may vote on the Plan.

If you are the holder of a Claim or Equity Interest entitled to vote on the Plan, but did not receive a Ballot, received a damaged Ballot, or lost your Ballot, or if you have any questions regarding the procedures for voting your- Claims or Equity Interests, please contact the Voting Agent at:

    Kevin Mann, Esq.
    Cross & Simon LLC,
    913 N. Market St., 11th Floor
    Wilmington, DE 19899-1380

### C. Confirmation Hearing

Pursuant to Section 1128 of the Bankruptcy Code, the Confirmation Hearing has been scheduled for _____, 2010 at _____, 2010, Eastern Time, before the Honorable _____, United States Bankruptcy Court for the District of Delaware located at 824 N. Market Street, Wilmington, Delaware 19801.[7] The Court may adjourn the Confirmation Hearing from time to time without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequently adjourned Confirmation Hearing.

Objections to the Confirmation of the Plan must be Filed with the Court and served upon (a) counsel for the Debtor, Christopher Simon & Kevin S. Mann, Esq., Cross & Simon, LLC, 913 N. Market Street, 11th Floor, P.O. Box 1380, Wilmington, DE 19899-1380; (b) counsel for Cadim, Victor G. Milione, Esq., Nixon & Peabody LLP, 100 Summer Street, Boston, Massachusetts 02110-2131 (c) counsel to New Anaverde LLC, Filiberto Agusti & Joshua Taylor, Steptoe & Johnson LLP, 1330 Connecticut Ave, NW, Washington, DC 20036 and (d) the Office of the United States Trustee, so as to be received by such parties before 4:00 p.m., Eastern Time, on [INSERT DATE].

THE DEBTOR BELIEVES THAT THE PLAN WILL ENABLE THE DEBTOR TO CONDUCT AN ORDERLY DISTRIBUTION TO ITS CREDITORS AFTER A SALE OF SUBSTANTIALLY ALL OF ITS ASSETS AS A GOING CONCERN, THUS ENABLING THE DEBTOR TO ACCOMPLISH THE OBJECTIVES OF CHAPTER 11. THE DEBTOR

---

[7] The hearing to consider approval the Sale Transaction has been scheduled to occur at the same time as the Confirmation Hearing.

BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR AND ITS CREDITORS.

D.  **Disclaimer**

ALL CREDITORS AND OTHER PARTIES IN INTEREST ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE ACCOMPANYING PLAN OF LIQUIDATION IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, OTHER EXHIBITS ANNEXED HERETO AND OTHER DOCUMENTS REFERENCED AS FILED WITH THE COURT PRIOR TO OR CONCURRENT WITH THE FILING OF THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE. THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN, PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OF ANAVERDE SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

CERTAIN STATEMENTS CONTAINED HEREIN, INCLUDING PROJECTED FINANCIAL INFORMATION AND OTHER FORWARD-LOOKING STATEMENTS, ARE BASED ON ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE INFORMATION IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN. NO PERSON OR ENTITY MAY USE ANYTHING IN THIS DISCLOSURE STATEMENT FOR ANY OTHER PURPOSE. THE FACTUAL INFORMATION CONTAINED HEREIN, INCLUDING THE DESCRIPTION OF THE DEBTOR, ITS BUSINESSES, AND EVENTS LEADING TO THE COMMENCEMENT OF THE CHAPTER 11 CASES, HAS BEEN OBTAINED FROM VARIOUS DOCUMENTS, AGREEMENTS AND OTHER WRITINGS RELATING TO THE DEBTOR, AND FROM DISCUSSIONS WITH AND VARIOUS WRITINGS PREPARED BY THE DEBTOR AND ITS LEGAL COUNSEL AND FINANCIAL ADVISORS.

THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES HEREIN. ALL EXHIBITS HERETO ARE

INCORPORATED INTO, AND ARE A PART OF, THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT, LIABILITY, STIPULATION OR WAIVER BUT RATHER AS A STATEMENT MADE WITHOUT PREJUDICE SOLELY FOR SETTLEMENT PURPOSES, WITH FULL RESERVATION OF RIGHTS. THIS DISCLOSURE STATEMENT SHALL NOT BE USED FOR ANY LITIGATION PURPOSE WHATSOEVER, AND SHALL NOT BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN THIS CASE OR ANY OTHER PARTY IN INTEREST, NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES LAW OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTOR.

## SECTION I. OVERVIEW OF CHAPTER 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11 of the Bankruptcy Code, a debtor is authorized to reorganize its business and capital structure for the benefit of its estate, creditors and stockholders. Alternatively, Chapter 11 authorizes a debtor to conduct an organized sale and liquidation of its business and assets for the benefit of its estate, creditors and stockholders. In addition to permitting rehabilitation or an organized liquidation of a debtor, another goal of chapter 11 is to promote equality of treatment for similarly situated creditors and equity interest holders with respect to the distribution of a debtor's assets.

The commencement of a chapter 11 case creates an estate containing all of the debtor's property as of the filing date. Generally, the debtor remains in possession of its property and continues to operate its business as a "debtor-in-possession."

The consummation of a plan of reorganization or liquidation is the principal objective of a chapter 11 case. A plan of reorganization or liquidation sets forth the means for treating claims against, and equity interests in, a debtor. Confirmation of a plan of reorganization or liquidation by the bankruptcy court makes the Plan binding upon the Debtor, any person acquiring property under the Plan and any creditor or equity interest holder of the debtor. Subject to certain limited exceptions, an order of the bankruptcy court confirming a plan of reorganization or liquidation discharges the debtor from any debt that arose prior to the date of confirmation of the Plan, and substitutes therefore the obligations specified under the confirmed plan.

A claim or interest is impaired under a plan of reorganization or liquidation if the Plan provides that such claim will not be repaid in full or that the legal, equitable or contractual rights of the holder of such claim or interest are altered. A holder of an impaired claim or interest that is receiving a distribution under a plan is entitled to vote to accept or reject a plan of reorganization. Chapter 11 does not require that every holder of a claim or interest to vote in favor of a plan of reorganization in order for the bankruptcy court to confirm the Plan. However,

the bankruptcy court must find that the Plan meets a number of statutory tests before it may confirm the Plan of reorganization. Many of these tests are designed to protect the interests of holders of claims or interests who do not vote to accept the Plan of reorganization or liquidation, but who nonetheless will be bound by the Plan's provisions if it is confirmed by the bankruptcy court.

Before soliciting acceptances of the proposed plan, a plan proponent must prepare and distribute to its creditors and equity interest holders entitled to vote on the Plan a detailed disclosure statement. Section 1125 of the Bankruptcy Code requires that the disclosure statement contain adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the Plan. The Debtor has prepared this Disclosure Statement in accordance with the requirements of Section 1125 of the Bankruptcy Code.

**SECTION II.**     **DESCRIPTION OF THE DEBTOR'S BUSINESS**

Anaverde is a limited liability company organized under the laws of California engaged in residential real estate development related to the Project described below.

### General Business Background and Restructuring Efforts

A.     **Overview**

Anaverde owns a master-planned, partially entitled residential development in Palmdale, California. The Project, the second Phase of a larger development, includes approximately 3500 undeveloped lots and an adjacent development known as Chandar planned for 157 single family home sites (collectively, the "Project"). The Project is partially graded and has had some landscaping done, but is otherwise incomplete. No homes are yet built on the Project.

The Project was calculated to be attractive to middle income homebuyers. The sub-prime crisis of 2008 has created conditions in which there is very little market appetite for the homes which were to be built on the Project site. In 2009, Anaverde's officers discovered that a spur of the San Andreas Fault runs through the Project, rendering infeasible much of the development anticipated at the site. In light of the foregoing and other factors, the fair market value of the project is now approximately $13 million.

Anaverde's existing secured lender, Cadim Note, Inc. ("Cadim") is owed approximately $63.9 million, which loan has been in payment default for over 10 months. In addition, Anaverde has numerous other creditors, some of which have filed mechanics' liens against the property and lawsuits against Anaverde

A development of the Project will require significant changes in the development plan and the investment of large amounts of additional capita. In view of the project's now-limited fair market value and the enormous amount of senior liens encumbering the property, Anaverde is no longer able to attract capital to develop the Project.

B.  **Restructuring Efforts**

There are similarly undeveloped residential projects adjacent to the Project, which have been in bankruptcy for extended periods with no successful sales of the properties. The Debtor's inquiries with respect to such a possibility have all met with no success.

Prior to the filing of this bankruptcy, Anaverde advised Cadim that it was considering filing for bankruptcy protection. A serious of discussions and negotiations followed between Anaverde, Anaverde's equity investors, and Cadim in an attempt to reach an agreement as to how to proceed with such a bankruptcy filing.

Cadim, Anaverde, and Anaverde's equity investors reached an agreement whereby Anaverde would file for bankruptcy and seek to confirm a plan that would be funded by a sale of Anaverde's assets pursuant to 11 U.S.C. § 363, free and clear of all liens,[8] to New Anaverde LLC,[9] an entity formed by some of Anaverde's equity investors. Cadim would support a Sale Transaction and the Plan, from which, notwithstanding its senior secured position, it would take only a maximum of about $12 million, gift $350,000 to the other unsecured creditors (i.e. the Convenience Class Claims and General Unsecured Claims), and waive its unsecured claims. The terms of the agreement are set forth in the Plan Support Agreement, attached hereto as **Exhibit D**.

More specifically, pursuant to the Plan Support Agreement, Anaverde agreed to, among other things:

A. File and pursue the Plan which provides for payments to Cadim on account of Cadim's Secured Claim equal to the sum of:

1. $10,475,000 of the cash proceeds from the Sale Transaction;[10]

2. An amount equal to 12% per annum, compounded annually, on $10,125,000 from December 24, 2009 until $10,125,000 is disbursed to Cadim, in no event more than $948,699.

3. unreimbursed reasonable fees and expenses of Cadim's counsel in pursuing the Plan, but in no event more than $383,000; and

4. a right, payable in the future if at all, to 25% of the cash profits from sales of land included in the Project which (i) are received by the Buyer during the two-year period following consummation of the Plan, and (ii) exceed

---

[8] Cadim's consent to the transfer free and clear of liens and its obligation to release its liens is contingent upon Confirmation of the Plan.

[9] New Anaverde shall have no obligation to purchase the assets unless and until the Plan is confirmed by the Bankruptcy Court.

[10] Cadim has agreed to gift to the unsecured creditors (i.e., the members of the Convenience Class and the General Unsecured Creditors), the next $350,000 of cash proceeds from the Sale Transaction which would otherwise be payable to Cadim for its Secured Claim.

the sum of (a) $26,700,000; (b) the amount paid under Section II B.A.(2), (c) any other amounts paid by the Buyer under the Plan and/or Sale Transaction not listed in the prior subsections, (d) the amount advanced by New Palmdale under the DIP Credit Facility, (e) any other amounts paid by New Palmdale under the Plan of Liquidation and/or Sale Transaction, and any other out-of-pocket costs or investments by Debtor, FCP, or Buyer after November 30, 2009, which are related to the Project, or listed in the prior subsections. Due to the state of the real estate market, this option is thought to be of only nominal value.

B. So long as the conditions of the Plan Support Agreement are satisfied, Cadim, agreed:

1. gift to the unsecured creditors, $350,000 of cash proceeds from the Sale Transaction which would otherwise be payable to Cadim for its Secured Claim,

2. that it will support and vote in favor of the Plan,

3. to credit bid as much of the Cadim Loan as New Anaverde shall request

4. waive the right to receive any further payment with respect to its claims against Anaverde,

5. release any liens or security interests it has in the Anaverde assets,[11]

6. accept, in full satisfaction, settlement, release and discharge of Cadim's Secured Claims, the Cadim Payment.

The proposed Plan conforms to the requirements of the Plan Support Agreement. Anaverde believes that this Plan represents the best option available to it in light of the current markets and the Project's need for funding.

1. **Efforts to Secure New Equity**

As discussed above, Anaverde has been unable to obtain any additional financing from Cadim.

2. **The Debtor's Post petition Financing**

As part of the Plan Support Agreement, New Anaverde agreed to provide debtor-in-possession financing on the terms and conditions set forth in the Debtor-in-Possession Credit Agreement ("DIP Financing Documents"). On the Petition Date, the Debtor filed a motion for authority to obtain debtor in possession financing (the "Post-Petition Financing") of up to two hundred fifty thousand Dollars ($250,000) upon entry of the Interim Order and in the amount of

---

11   Cadim shall have no obligation to release its liens unless and until the Plan is confirmed.

up to [one million Dollars $1,000,000) upon entry of the Final Order. On [insert date], this Court authorized the Debtor to obtain the Post-Petition Financing on an interim basis. The Debtor anticipates that the Post-Petition Financing will reassure the Debtor's creditors, as well as its critical vendors and suppliers, that the Debtor will continue to meet its post-petition obligations in the ordinary course. The Post-Petition Financing has been an integral factor in the Debtor's ability to preserve the ongoing confidence of its creditors, vendors and suppliers while the Debtor implements its financial restructuring. A hearing is scheduled for [insert date] to consider the Post-Petition Financing on a final basis. Pursuant to the DIP Financing Documents, Anaverde granted, and the Court approved, among other things, the granting of security interest, liens (including priming liens pursuant to section 364(d) of the Bankruptcy Code), to New Anaverde LLC to secure all obligations of the Debtor under and with respect to the DIP Facility: (I) a perfected Lien, pursuant to Section 364(c)(3) of the Bankruptcy Code, upon the Borrower's right, title and interest in, to and under all Collateral subject to the Lien of the Cadim Loan, that is junior in priority and payment to the Lien of the Cadim Loan; provided, however, that after Cadim has received an aggregate amount in respect of the Cadim Loan, from any source whatsoever, equal to the Cadim Payment, then the Lien of the Lender for repayment of the Loans and payment of other obligations hereunder shall be senior to the Lien of the Cadim Loan until the Loans are fully repaid and all such other obligations are fully paid, (II) a first priority, perfected Lien, pursuant to Section 364(c)(2) of the Bankruptcy Code, upon all of the Borrower's right, title and interest in, to and under all Collateral that is not otherwise encumbered by a validly perfected lien or security interest, (III) an allowed administrative expense claim in the Case pursuant to Section 364(c)(1) of the Bankruptcy Code having priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code.

### SECTION III.	SIGNIFICANT PRE-PETITION TRANSACTIONS

**A.	Description of Anaverde's Primary Financing :**

The following is a summary of the Debtor's current financial arrangements with its secured and unsecured creditor constituencies.

**1.	Loan from Cadim Note, Inc.**

In 2008, Anaverde entered into a loan agreement with Cadim in the principal amount of $77,350,328.56. Cadim was granted a lien on substantially all of Anaverde's assets. The current outstanding balance on the Cadim loan is approximately $63.9 million. As explained above, an agreement has been negotiated whereby Cadim will release Anaverde from any and all liability related to the Cadim Note.[12]

**2.	Outstanding bills from Anaverde's subcontractors and vendors**

Outstanding bills from Anaverde's contractors and vendors total approximately $1.2 million. Some of Anaverde's creditors have filed mechanic's liens against the property and lawsuits against Anaverde.

---

12	Such release is conditioned upon Confirmation of the Plan.

## KEY EVENTS LEADING TO THE COMMENCEMENT OF THE CHAPTER 11 CASE

Anaverde's business has been impacted by the current housing market which has substantially decreased the value of the land owned by Anaverde as well as Anaverde's ability to market it residential plots due to weak demand for housing. There is virtually no current market for the sale of new homes in the Palmdale area.

As discussed above, the Plan Support Agreement was negotiated with Cadim to offer a resolution to Anaverde's current financial problems through a bankruptcy proceeding. Following execution of the Plan Support Agreement, Anaverde and the other Parties to the Plan Support Agreement prepared the necessary pleadings for this bankruptcy case. On January 15, 2010, Anaverde filed its petition for relief under the bankruptcy code.

## SECTION IV.
## THE CHAPTER 11 CASE

**A.**    **Disclosure Statement and Plan Confirmation Hearings**

On the Commencement Date, the Debtor filed this Disclosure Statement and the Plan with the Court. The Court considered the adequacy of the Disclosure Statement and the Plan at a hearing on _____, 2010]. The Confirmation Hearing in respect of the Plan has been scheduled for _____, 2010, at _____, Eastern Time, before the Honorable _____ at the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19801.

**B.**    **Significant "First Day" Motions in the Chapter 11 Case**

Simultaneous with the filing of its chapter 11 petition, the Debtor filed numerous "first day" motions seeking orders from the Court authorizing the Debtor to retain professionals and providing the Debtor certain relief from certain administrative requirements imposed by the Bankruptcy Code. On [insert date], the Court entered orders granting the Debtor the various forms of relief requested. In particular, the Debtor obtained orders approving the following motions and applications:

   1.    **Motions Relating to Administration of Case and its Professionals:**

      (a)   **Debtor's Motion For an Order Authorizing the Retention and Payment of Professionals utilized in the Ordinary Course of Business;;**

      (b)   **Motion Of Debtor For Administrative Order, Under 11 U.S.C. §§ 105(a) And 331, Establishing Procedures For Interim Compensation And reimbursement Of Expenses Of Professionals;**