# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| ANAVERDE LLC | ) Case No. 10-10113 (MFW) |
|  | ) |
| Debtor. | ) |
|  | ) **Re: Docket No. 4** |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 365 AND 507: (1) APPROVING SECURED POSTPETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING LIENS AND PROVIDING SUPERPRIORTY ADMINISTRATIVE EXPENSE STATUS; (4) GRANTING ADEQUATE PROTECTION, (5) MODIFYING AUTOMATIC STAY; AND (6) SCHEDULING A FINAL HEARING**

THIS MATTER having come before the Court upon the motion (the "DIP Motion")[1] of the debtor and debtor in possession (the "Debtor") in the above-captioned Chapter 11 case (the "Case"),

(a) seeking this Court's authorization pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 365 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the (Bankruptcy Rules"), and Del. Bankr. L.R. 4001-2, for the Debtor *inter alia,*

(1) to obtain secured, superpriority post-petition financing ("DIP Financing") up to an aggregate principal amount not to exceed $250,000 upon entry of the Interim Order and in the amount of up to $700,000 upon entry of the Final Order (the "Commitment"), plus accrued interest on the aggregate principal amount upon the terms and conditions set forth in the Loan Documents (as defined below), from New Anaverde LLC (the "DIP

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the DIP Motion and/or Loan Documents, as applicable.

Lender"), and of the Debtor to execute the Debtor in Possession Credit Agreement with respect to the DIP Financing substantially in the form attached as Exhibit B to the DIP Motion (as it may be amended, supplemented, restated, or otherwise modified from time to time, the "DIP Credit Agreement"); and for the Debtor to execute a promissory note (the "Note") and the Pledge and Security Agreement ("Post-Petition Pledge and Security Agreement) each in substantially the form attached to the DIP Credit Agreement (the DIP Credit Agreement, the Note, the Post-Petition Pledge and Security Agreement and all ancillary documents at any time executed in connection therewith, collectively, the "Loan Documents");

(2) to grant the DIP Lender: (i) a perfected Lien, pursuant to Section 364(c)(3) of the Bankruptcy Code, upon the Debtor's Assets, the ALM Membership Interest and the Palmdale Membership Interest, that are subject to the Lien of the Cadim Loan, that is junior in priority and payment to the Lien of the Cadim Loan; provided, however, that after Cadim has received an aggregate amount in respect of the Cadim Loan, from any source whatsoever, equal to the Cadim Payment, then the Lien of the Lender for repayment of the Loans and payment of other obligations hereunder shall be senior to the Lien of the Cadim Loan until the Loans are fully repaid and all such other obligations are fully paid; (ii) a first priority, perfected Lien, pursuant to Section 364(c)(2) of the Bankruptcy Code, upon all of the Debtor's Assets that are not otherwise encumbered by a validly perfected lien or security interest, (iii) an allowed superpriority administrative expense claim in the Case pursuant to Section 364(c)(1) of the Bankruptcy Code having priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code; (iv) proceeds of Avoidance Actions to the extent any

arise under Section 549 of the Bankruptcy Code or otherwise; (v) any rights under Section 506(c) of the Bankruptcy Code and the proceeds thereof; (vi) authorizing the Debtor, ALM and Palmdale to execute and deliver the Security Documents to the Lender and to reasonably cooperate with the Lender in obtaining for the Lender valid and perfected security interests and liens as security for the Obligations as set forth herein.

(b) seeking a preliminary hearing (the "Interim Hearing") on the DIP Motion to consider entry of an interim order pursuant to Bankruptcy Rule 4001 (the "Interim Order") authorizing the Debtor to borrow from the DIP Lender under the DIP Financing up to an aggregate of $250,000 upon entry of the Interim Order and in the amount of up to $700,000 upon entry of the Final Order plus accrued interest on the aggregate principal amount upon the terms and conditions set forth in the Loan Documents and this Interim Order pending the Final Hearing referred to below; and due and sufficient notice of the motion under the circumstances having been given and the Interim Hearing on the DIP Motion having been held before this court on January 21, 2010; and up on the entire record made at the Interim hearing; and this Court having found good and sufficient cause appearing;

(c) scheduling a final hearing (the "Final Hearing") to consider the relief requested in the DIP Facility Motion and approving the form of notice with respect to the Final Hearing.

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW BASED UPON THE RECORD BEFORE IT:**

1. On January 15, 2010 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing this Case.

2.     The Debtor is continuing in the management and operation of its business and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Case.

3.     This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Case and proceeding on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     As of the date hereof, the United States Trustee (the "U.S. Trustee") has not yet been appointed an official committee of unsecured creditors in this Case pursuant to section 1102 of the Bankruptcy Code ( a "Statutory Committee").

5.     On January 15, 2010 the Debtor filed the DIP Motion requesting Interim relief pending a Final Hearing on the DIP Financing.

6.     Notice of the Interim Hearing and the emergency relief requested in the DIP Motion was provided by the Debtor, whether by fax, email, overnight courier or hand delivery to certain parties in interest, including: (i) the U.S. Trustee, (ii) counsel to the Prepetition Lender; (iii) all other parties with liens of record on assets of the Debtor as of the Petition Date; and (iv) the Debtor's 20 largest unsecured creditors, as identified in their chapter 11 petitions. The parties have made reasonable efforts to afford the best notice possible under the circumstances to permit interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

7.     This Interim Hearing is being held pursuant to the provisions of Bankruptcy Rule 4001(c)(2).

8. In 2008, Anaverde entered into a loan agreement with Cadim in the principal amount of $77,350,328.56. Cadim was granted a lien on substantially all of Anaverde's assets. The current outstanding balance on the Cadim loan is approximately $63.9 million.

9. Cadim has agreed to the entry of this Interim Order and the granting to the DIP Lender of the security interest in the priority set forth herein and in the Loan Documents.

10. The Debtor cannot operate solely on Cash Collateral. The Debtor's need to obtain credit pursuant to the DIP Facility and to use Cash Collateral is immediate and critical as the Debtor does not have sufficient available sources of working capital and financing to operate its business or maintain its properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

11. The Debtor's access to sufficient working capital and liquidity through the incurrence of postpetition financing under the DIP Facility and the use of cash collateral is vital to maximizing the value of the Debtor's estate. Without access to the DIP Facility and the continued use of cash collateral, the Debtor lacks sufficient funds to pay administrative expenses or maintain its operations pending a sale of assets. As a result, without the DIP Facility, the estate would suffer immediate and irreparable harm and would have no option but to convert this case to one under Chapter 7.

12. Given its current financial condition, financing arrangements, and capital structure, although the Debtor has sought, the Debtor is unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Facility. The Debtor has been unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtor has also been unable to obtain credit: (a) having priority over administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the

- 5 -

Bankruptcy Code; or (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien.

13.     Anaverde Land Management, LLC ("ALM") and Palmdale Land Investors ("Palmdale"), comprising the sole members of the Debtor, have agreed to provide the collateral to secure the loans under the DIP Credit Agreement.

14.     Financing on a postpetition basis is not otherwise available without granting the DIP Lender, (i) a perfected Lien, pursuant to Section 364(c)(3) of the Bankruptcy Code, upon the Debtor's Assets, the ALM Membership Interest and the Palmdale Membership Interest that are subject to the Lien of the Cadim Loan, that is junior in priority and payment to the Lien of the Cadim Loan; provided, however, that after Cadim has received an aggregate amount in respect of the Cadim Loan, from any source whatsoever, equal to the Cadim Payment, then the Lien of the Lender for repayment of the Loans and payment of other obligations hereunder shall be senior to the Lien of the Cadim Loan until the Loans are fully repaid and all such other obligations are fully paid, (ii) a first priority, perfected Lien, pursuant to Section 364(c)(2) of the Bankruptcy Code, upon all of the Debtor's Assets that are not otherwise encumbered by a validly perfected lien or security interest, (iii) an allowed superpriority administrative expense claim in the Case pursuant to Section 364(c)(1) of the Bankruptcy Code having priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code, and (iv) the other protections set forth in this Interim Order and the Loan Documents.

15.     As a condition to the entry into the DIP Agreement, the extension of credit under the DIP Facility and the agreement for the use of Cash Collateral, the DIP Lender requires, and the Debtor has agreed that proceeds of the DIP Facility shall be used in a manner consistent with the terms and conditions of the Loan Documents. The Debtor may use the proceeds to pay the

expenses incurred by the Debtor's estate in the ordinary course of business, in all cases subject to the terms of this Agreement, the attached Budget and orders of the Bankruptcy Court and are actual, necessary costs and expenses of preserving the estate under Section 503(b)(1) of the Bankruptcy Code. The Debtor shall not use the proceeds of any Loan for any purpose other than payment of the expenses of the estate and expenses incurred by the Debtor in the ordinary course of business.

16.     The DIP Lender shall, upon the entry of the Final Order, be entitled to and receive (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code; and (b) upon to entry of a Final Order (as defined herein), a waiver of the provisions of section 506(c) of the Bankruptcy Code, in both instances only if the Bankruptcy Court authorizes such relief.

17.     The DIP Lender is willing to provide financing to the Debtor subject to: (a) the entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the Loan Documents and satisfaction of all conditions precedent in the Loan Documents; and (c) entry of findings by this Court that such financing is essential to the Debtor's estate, that the DIP Lender is extending credit to the Debtor pursuant to the Loan Documents in good faith, and that the DIP Lender's claims, super-priority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order and the Loan Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order, or by the filing or pendency of any motion or appeal seeking to reverse, modify, vacate, amend, reargue, or reconsider this Interim Order or any other

order provided that the Interim Order was not stayed by court order after due notice was given to the DIP Lender.

18.     The terms and conditions of the DIP Facility and the Loan Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtor under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Facility, the use of Cash Collateral and the agreement by the Prepetition Lender to the DIP Liens was negotiated in good faith and at arms' length among the Debtor, Prepetition Lender and DIP Lender. Use of Cash Collateral and credit to be extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Lender is therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

19.     At the Final Hearing, the Debtor will seek final approval of the proposed postpetition financing arrangements and use of Cash Collateral arrangements pursuant to a proposed final order (the "Final Order"), which shall be in form and substance satisfactory to the DIP Lender, approving such postpetition financing arrangements and use of Cash Collateral arrangements, notice of which Final Hearing and Final Order will be provided in accordance with this Interim Order.

20.     Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

- 8 -

**IT IS HEREBY ORDERED** that:

1.      The DIP Motion is granted on an interim basis, the Interim Financing (as defined herein) is authorized, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.      All objections to the entry of the Interim Financing, if any, to the extent not withdrawn or resolved are hereby overruled.

3.      The Debtor is authorized to execute and deliver the Loan Documents, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the Loan Documents, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the Loan Documents. The Debtor is hereby authorized to pay (in cash or in kind as applicable) the principal, interest, fees, expenses and other amounts described in the Loan Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval to the extent provided in the Loan Documents including, without limitation, closing fees, unused facility fee, commitment fees, servicing fees, audit fees, structuring fees, administrative agent's fees, the fees and disbursements of the DIP Lender (including the fees and expenses of the DIP Lender's attorneys, advisers, accountants, and other consultants, collateral examination, monitoring and appraisal fees, financial advisory fees, indemnification, and any other reimbursement of fees and expenses, all of which fees and expenses shall constitute obligations under the DIP Credit Agreement), whether or not the transactions contemplated hereby are consummated, all to the extent provided in the Loan Documents. All collections and proceeds, whether from ordinary course collections, asset sales,

debt or equity issuances, insurance recoveries (unless otherwise agreed by the DIP Lender that such recoveries be used to replace certain assets), condemnations or otherwise shall be deposited and applied as required by this Interim Order and the Loan Documents.

4.     Upon execution and delivery, the Loan Documents shall represent valid and binding obligations of the Debtor, enforceable, in accordance with the terms of the Loan Documents, against the Debtor, its estate, and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Case, or any Case under chapter 7 of the Bankruptcy Code upon the conversion of the Case, or in any proceedings superseding or related to any of the foregoing.

5.     Pending the Final Hearing, and subject to the terms and conditions set forth in the Loan Documents, DIP Facility, and this Interim Order, and in order to prevent immediate and irreparable harm to the Debtor's estate, the Debtor is hereby authorized to borrow from the DIP Lender, up to $250,000 upon entry of the Interim Order and in the amount of up to $700,000 upon entry of the Final Order. Authorization is hereby granted for the proceeds of the Loan to be used to meet the Debtor's obligations, in a manner consistent with the terms of the Loan Documents and this Order and to pay when due expenses of the types and in amounts set forth in the DIP Credit Agreement.

6.     As collateral for the Loan, upon entry of this Interim Order, the DIP Lender is granted, pursuant to sections 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), and 507(b) of the Bankruptcy Code, a continuing, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interest in and liens on all rights, title and interests of the Debtor in property of any kind, real and personal, tangible and intangible, and any property

acquired by Debtor in the future, including but not limited to, future profits earned by the Debtor or proceeds from the sale of any of Debtor's property in the future (the "DIP Liens").

7.   The DIP Liens shall constitute (i) a perfected lien, pursuant to Section 364(c)(3) of the Bankruptcy Code, upon the Debtor's Assets, the ALM Membership Interest and the Palmdale Membership Interest, that are subject to the Lien of the Cadim Loan, that is junior in priority and payment to the Lien of the Cadim Loan; provided, however, that after Cadim has received an aggregate amount in respect of the Cadim Loan, from any source whatsoever, equal to the Cadim Payment, then the Lien of the Lender for repayment of the Loans and payment of other obligations hereunder shall be senior to the Lien of the Cadim Loan until the Loans are fully repaid and all such other obligations are fully paid, and (ii) a first priority, perfected Lien, pursuant to Section 364(c)(2) of the Bankruptcy Code, upon all of the Debtor's Assets that are not otherwise encumbered by a validly perfected lien or security interest.

8.   Except as set forth in paragraph 7 above and in this paragraph, the DIP Liens shall be prior and senior to all liens and encumbrances of all other secured credits in and to such Collateral granted, or arising, after the Petition Date. To the extent that the Final Order provides for such relief, the Debtor shall not assert a claim under Bankruptcy Code § 506(c) for any costs and expenses incurred in connection with the preservations, protection or enhancement of, or realization by the DIP Lender upon the collateral. To the extent that the Final Order provides for such relief, the DIP Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. To the extent that the Final Order provides for such relief, no lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the DIP Liens.

9. To the extent that the Final Order provides for such relief, upon entry of this Interim Order, the DIP Lender is granted an allowed superpriority administrative expense claim in the Case pursuant to Section 364(c)(1) of the Bankruptcy Code having priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code.

10. To the extent that the Final Order provides for such relief, upon entry of this Interim Order, the DIP Lender is allowed any proceeds from Avoidance Actions to the extent that any arise under Section 549 of the Bankruptcy Code and the proceeds thereof.

11. Upon entry of this Interim Order, the DIP Lender shall be entitled to any rights or proceeds allowed under Section 506(c) of the Bankruptcy Code.

12. Upon entry of this Interim Order, the Debtor, ALM, and Palmdale are explicitly authorized to execute and deliver the Security Documents to the Lender and to reasonably cooperate with the Lender in obtaining for the Lender valid and perfected security interests and liens for the Obligations set forth herein.

13. The DIP Lender shall not have any obligation to make any loan or advance under the Loan Documents, unless all of the conditions precedent to the making of such extension of credit under the applicable Loan Documents and this Interim Order have been satisfied in full or waived in writing by the DIP Lender.

14. From and after the Petition Date, the Debtor shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Interim Order, the Loan Documents and in compliance with the Budget. A copy of the initial Budget is annexed as **Exhibit A** hereto.

15. Subject to the terms and conditions of this Interim Order and the Loan Documents, and in accordance with the Budget, the Debtor is authorized to use Cash Collateral until the Termination Date. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business, or the Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Facility, the Loan Documents, and in accordance with the Budget.

16. The Loan Documents may from time to time be amended, modified or supplemented by the parties thereto without notice or a hearing if: (a) the amendment, modification, or supplement is: (i) in accordance with the Loan Documents; (ii) beneficial to the Debtor; and (iii) not prejudicial in any material respect to the rights of third parties; (b) a copy (which may be provided by fax or email) of the amendment, modification or supplement is provided to counsel for any Statutory Committee and the U.S. Trustee contemporaneous with its execution; and (c) the amendment, modification or supplement is filed with the Court; provided, however, that consent of any Statutory Committee or the U.S. Trustee, and approval of the Court are not necessary to effectuate any such amendment, modification, or supplement. Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions of any DIP Document shall be effective unless set forth in writing, signed on behalf of the Debtor and the DIP Lender; and approved by the Court on notice.

17. The Budget and any modifications to, or amendment or update of, the Budget shall be in the form and substance acceptable to and approved by the DIP Lender. The Budget may be amended or modified in writing from time to time only with the written consent of the Required DIP Lender and without need for approval by this Court, provided that such amendments or modifications are (i) in accordance with the Loan Documents, (ii) not prejudicial

in any material respect to the rights of third parties, (iii) filed with the Court and (iv) served on counsel for any Statutory Committee and the U.S. Trustee.

18.     The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as to the extent necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtor to grant the DIP Liens; (b) permit the Debtor to perform such acts as the DIP Lender may request in its sole discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtor to incur all liabilities and obligations to the DIP Lender under the Loan Documents and the DIP Facility to the extent authorized by this Interim Order; and (d) authorize the Debtor to pay, and the DIP Lender to retain and apply, payments made in accordance with the terms of this Interim Order.

19.     This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens by operation of law without the necessity of any further action by the DIP Lender or filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, or to entitle the DIP Lender to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender is authorized to file, as it deems necessary or advisable in their sole discretion, such financing statements, mortgages, notices and other instrument or documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable DIP Liens and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in

- 14 -

order to create, evidence or perfect the DIP Liens. The Debtor is authorized and directed to execute and deliver promptly upon demand to the DIP Lender, all such financing statements, mortgages, titles insurance policies, notices, instruments, and other documents as the DIP Lender may reasonably request. The DIP Lender, may in its sole discretion, file a photocopy of this Interim Order as a financing statement or notice with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, mortgages, notices of lien, instrument, or similar document.

20.     If the Debtor, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in this Case or any Successor Case, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) in violation of the Loan Documents at any time prior to the indefeasible repayment in full in cash of all DIP Obligations and the termination of the DIP Lender's obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to the Debtor and the Debtor's estate, and such financing is secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender.

21.     Until the indefeasible payment in full in cash of all DIP obligations and the termination of the DIP Lender's obligations to extend credit under the DIP Facility, the Debtor shall: (a) insure the DIP Collateral Account as required under the DIP Facility; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court which has been first agreed to by the DIP Lender or as otherwise required by the Loan Documents.

22. The Debtor shall not sell, transfer, lease, or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the DIP Lender (and no such consent shall be implied, from any other action, inaction or acquiescence) or as expressly permitted in the Loan Documents, it being understood that any sale, transfer, lease or other disposition of any of the Debtors or all or substantially all of the assets or properties of any or all of the Debtors shall at all times require the prior written consent of the DIP Lender.

23. Upon the Termination Date: (a) all DIP Obligations shall be immediately due and payable and all commitments to extend credit under the DIP Facility will terminate; and (b) all authority to use Cash Collateral shall cease.

24. **[Intentionally omitted]**

25. Immediately upon the occurrence and during the continuation of an Event of Default as defined in Section 7.1 of the DIP Credit Agreement the DIP Lender may, upon three (3) days' prior written notice to the Debtor, any statutory committee of unsecured creditors, if any, appointed in the case and the Office of the U.S. Trustee, apply to the Bankruptcy Court for relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code in order to enable the Lender to exercise rights or remedies and take all or any of the following actions: (a) terminate the Commitment and thereafter cease to make Loans to the Debtor; (b) by written notice to the Debtor (a "Notice of Acceleration") declare the principal of and accrued interest, fees and other liabilities constituting the Obligations to be due and payable; and/or (c) take any other action or exercise any other right, power or remedy permitted to the Lender under the Loan Documents, the Orders or by operation of law, including, without limitation, (i) commencing judicial or nonjudicial foreclosure proceedings against the Collateral, (ii) accepting the Collateral in partial or full satisfaction of the Obligations in accordance with applicable law, including,

without limitation, Sections 9-620 through 9-622 of the Delaware Uniform Commercial Code (Del. Code Ann. Tit. 6 §§ 9-620 to 9-622), (iii) enforcing the Lender's security interest in the Collateral by means of one or more public or private sales thereof, and (iv) exercising any or all of the rights of a secured party pursuant to applicable law. All rights, powers and remedies of the Lender in connection with each of the Loan Documents may be exercised at any time or from time to time, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

26. To the extent that the Lender obtains relief from the automatic stay under Section 362 of the Bankruptcy Code in order to enable the Lender to exercise its rights or remedies pursuant to Sections 7.2(a) of this Agreement, such exercise shall be subject to the rights and obligations of Cadim to the extent the Lien granted to the Lender in Section 2.11(a)(ii) is junior to the Lien of the Cadim Loan pursuant to such Section, and, upon the Lender's successful foreclosure on its interest in the Collateral pursuant to such relief, the automatic stay under Section 362 of the Bankruptcy Code shall be of no further force and effect with respect to the Collateral.

27. The DIP Lender has acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the extent, validity, perfection, priority, allowability, enforceability or non-avoidability of any advances previously made or made

hereunder, or lien, claim or priority granted, perfected, authorized or created hereby. Any liens or claims granted to the DIP Lender hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein, provided that the Interim Order was not stayed by court order after due notice was given to the DIP Lender.

28. **[Intentionally omitted]**

29. Without limiting the rights of access and information afforded the DIP Lender under the Loan Documents, the Debtor shall be, and hereby is, required to afford representatives, agents and/or employees of the DIP Lender reasonable access to the Debtor's premises and its books and records in accordance with the Loan Documents, as the case may be, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, by consenting to entry of this Order, the Debtor has authorized its independent certified public accountants, financial advisors, restructuring advisers, investment bankers and consultants to cooperate, consult with, and provide to the DIP Lender all such information as may be reasonably requested with respect to the business, results of operations and financial condition of the Debtor.

(b) The DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Case or any Successor Case under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be contrued: (i) to obligate the DIP Lender, in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the

Debtors have sufficient funds to pay such compensation or reimbursement; or (iii) as consent to the allowance of any professional fees or expenses of any Case Professionals.

30. The DIP Facility, the DIP Collateral, the Cash Collateral may not be used to pay Ineligible Professional Expenses. As defined in the DIP Agreement, "Ineligible Professional Expenses" means any fees or expenses incurred by any Person, including a Statutory Committee or any Debtor in (A) preventing, hindering or delaying the applicable DIP Lender's enforcement or realization upon any of the Collateral once an Event of Default has occurred, (B) using or seeking to use cash collateral not in compliance with the Budget and the Interim Order or the Final Order, whichever is in effect at the time of reference thereto, or selling any other Collateral, in each case with the DIP Lender's consent, (C) incurring Indebtedness not permitted by the DIP Credit Agreement.

31. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

32. To the extent the Final Order provides for such relief, no costs or expenses of administration which have been or may be incurred in the Case at any time shall be charged against the DIP Lender or any of their respective claims, the DIP Collateral or the Prepetition Collateral pursuant to section 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of the affected DIP Lender, and no such consent shall be implied, directly or indirectly, from any action, inaction, or acquiescence by any such agents or lender.

33. To the extent the Final Order provides for such relief, the DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

34.     The DIP Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and to the extent the Final Order provides for such relief, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lender.

35.     The Debtor expressly stipulates, and the Court finds and adjudicates that, the DIP Obligations shall not be discharged by the entry of an order confirming any plan of liquidation, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of liquidation.

36.     Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Lender's right to seek any other or supplemental relief in respect of any Debtor, or (b) any of the rights of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Case or any Successor Case, conversion of the Case to a case under Chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans.  Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable, or otherwise) of the DIP Lender are preserved.

37.     The failure of any DIP Lender to seek relief or otherwise exercise its respective rights and remedies under this Interim Order, the Loan Documents, or applicable law, as the case

may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Lender.

38. Until and unless the DIP Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facility have been terminated, the Debtor irrevocably waives the right to seek and shall not seek or consent to, directly or indirectly: (a) without prior written consent from the DIP Lender (i) any modification, stay, vacatur or amendment to this Interim Order (and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Lender; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind of nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in the Case or any Successor Case equal or superior to the DIP Liens; (b) without the prior written consent of the DIP Lender, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens.

39. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of liquidation in the Case; (b) converting the Case to a case under chapter 7 of the Bankruptcy Code; or (c) with respect to the DIP Liens only, dismissing the Case or any converted Case. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Lender pursuant to this Interim Order,notwithstanding the entry of any such order, shall continue in the Case, in any converted Case, or with respect to DIP Liens only, following dismissal of the Case, in any Successor Case, and shall maintain their priority as

provided by this Interim Order until all DIP Obligations and Prepetition Obligations have been indefeasibly paid in full in cash and all commitments to extend credit under the DIP Facility are terminated.

40. <u>Carve Out.</u>

   a. Carve Out. As used in this Interim Order, the "Carve Out" means, upon the occurrence of the Termination Date (as that term is defined in the DIP Agreement), the following expenses: (i) all statutory fees payable to the clerk of the Court or the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (ii) the allowed and unpaid professional fees, expenses and disbursements incurred on or after the Termination Date by the Debtor and the Creditors Committee or any other statutory committee appointed in the Cases pursuant to Section 1102 of the Bankruptcy Code (each, a "Statutory Committee") for any professionals retained by final order of the Court (which order has not been vacated or stayed, unless the stay has been vacated) by the Debtor or any Statutory Committee under Sections 327, 328 or 1103(a) of the Bankruptcy Code (the "Case Professionals") in an aggregate amount (the "Case Professionals Carve Out") not to exceed $136,575.00 (including the reimbursement of expenses allowed by the Bankruptcy Court incurred by any Statutory Committee member in the performance of its duties, but excluding fees and expenses of third party professionals employed by such members), plus such fees, expenses and disbursements incurred prior to the Termination Declaration Date, but which remain unpaid as of the Termination Declaration Date (collectively, the "Allowed Professional Fees").

   b. No Direct Obligation to Pay Professional Fees. The DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases under any Chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Lender in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

   c. Payment of Allowed Professional Fees Prior to the Termination Date. Prior to the occurrence of the Termination Date, the Debtor shall be permitted to pay Allowed Professional Fees, solely to the extent incurred in accordance with the Budget. The amounts paid in accordance with the Budget shall not reduce the Carve Out.

   d. Payment of Carve Out After Termination Date. Any payment or reimbursement made on or after the occurrence of the Termination Date in respect of any Allowed Professional Fees (exclusive of the application of any retainers by any of the Case Professionals) shall permanently reduce the Case

Professionals Carve Out on a dollar-for-dollar basis. Any funding of the Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code, and applicable law.

41.  In the event of any inconsistency between the terms and conditions of the Loan Documents and this Interim Order, the provisions of this Interim Order shall govern and control.

42.  The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for Feb. 5, 2010 at 2:00 p.m. (Eastern Time) before the Honorable Mary F. Walrath United States Bankruptcy Judge, Courtroom _____ at the United States Bankruptcy Court for the District of Delaware. On or before Jan. 22, 2010 the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with a copy of this Interim Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; and (c) counsel for any Statutory Committee. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than 4:00 p.m. (Eastern Time) on Feb. 3, 2010, which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtor, attn: Cross & Simon LLC, 913 N. Market St., 11th Floor, Wilmington, DE 19899-1380.; (ii) counsel to any Statutory Committee; (iii) counsel to the DIP Lender: Steptoe & Johnson, LLP, 1330 Connecticut Avenue, NW, Washington, DC 20036, Attention: Filiberto Agusti and Joshua Taylor; (iv) counsel to Cadim Note Inc., Nixon & Peabody LLP, 100 Summer Street, Boston, MA, 02110, Attention: Victor Millione and (v) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801.

- 23 -

43.     This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

44.     The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

SO ORDERED by the Court this 21st day of Jan , 2010.

_____

UNITED STATES BANKRUPTCY JUDGE